FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 22, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ISAIAH MOSSES COLLEY, DAKOTA LEIGH STREET, DION ALBERTO GALVAN, BERNICE TANYA COLLEY, LYDIA RESENDEZ, and DAVID MARTINEZ,<br><br>Plaintiffs,<br><br>v.<br><br>BENTON COUNTY, WASHINGTON; CITY OF PROSSER, WASHINGTON; CITY OF CENTRALIA; and LEWIS COUNTY, WASHINGTON,<br><br>Defendants. | NO. 4:22-CV-5157-TOR<br><br>ORDER GRANTING DEFENDANT BENTON COUNTY'S MOTION FOR JUDGMENT ON THE PLEADINGS |

BEFORE THE COURT is Defendant Benton County's Motion for Judgment on the Pleadings. ECF No. 50. This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendant Benton County's Motion for Judgment on the Pleadings (ECF No. 50) is GRANTED.

ORDER GRANTING DEFENDANT BENTON COUNTY'S MOTION FOR JUDGMENT ON THE PLEADINGS ~ 1

# BACKGROUND

This matter arises from the alleged improper detention and/or arrest of Plaintiffs Isaiah Mosses Colley, Dakota Leigh Street, Dion Alberto Galvan, Bernice Tanya Colley, Lydia Resendez, and David Martinez.  ECF No. 1-1.

On August 5, 2019, Prosser Police Officer Antonio Bustamante was shot by an assailant, later improperly identified as Plaintiff Mosses Colley.  *Id*. at 6, ¶ 6.2. An arrest warrant was issued for Mosses Colley by Benton County, and surveillance was placed on Mosses' mother's home, in Lewis County, Washington. *Id*.  Meanwhile, Plaintiffs contend that Mosses Colley was with his family, who were all enjoying a summer day together.  *Id*., ¶ 6.1.  At some point during the day, Plaintiffs David Galvan, Lydia Resendez, and David Martinez attempted to leave the home, but were met by officers who detained their vehicle at gunpoint.  *Id*., ¶ 6.3.  Officers, believing Dion was Mosses, detained him in a vehicle (it isn't clear if he remained in his own vehicle or was moved to a police vehicle) for some amount of time sufficient to place him "at significant risk" of triggering his chronic asthma.  *Id*.

Police detained the remaining plaintiffs, Isaiah "Mosses" Colley, Dakota Street, and Bernice "Tanya" Colley, at Tanya's home.  *Id*. at 7, ¶ 6.6.  Dakota, Dion, and Tanya were arrested for rendering criminal assistance, and placed in the Lewis County jail.  *Id*., ¶ 6.12.  Each were released after some length of detention,

ORDER GRANTING DEFENDANT BENTON COUNTY'S MOTION FOR JUDGMENT ON THE PLEADINGS ~ 2

and the charges were dismissed. *Id.*, ¶¶ 6.13–6.14. Dakota, who was pregnant and arrested without her phone, had to walk over five miles home upon her release. *Id.* at 8, ¶ 6.16. Further, Plaintiffs allege that while in custody, officers of some municipality called Dakota's father to tell him that she was pregnant, and that Mosses, as the father of her child, was a threat to her safety. *Id.*, ¶ 6.15.

Meanwhile, Mosses was transferred to the custody of Benton County, facing criminal charges stemming from the alleged officer involved shooting. *Id.*, ¶ 6.19. Benton County held Mosses in jail for over a year, and during that time Plaintiffs assert that his basic medical needs were not met. *Id.*, ¶¶ 6.20, 6.23. The charges against Mosses were eventually dismissed. *Id.*, ¶ 6.21.

Plaintiffs filed a Complaint on October 4, 2022, in Superior Court for the County of Walla Walla, Washington. ECF No. 1-1. On December 9, 2022, Defendants removed the action to federal court pursuant to 28 U.S.C. § 1441(a). ECF No. 1. Plaintiffs did not challenge the removal. The initial Complaint raised allegations of violations of the Washington State Constitution, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against all Defendants. ECF No. 1-1 at 10–12. The Court dismissed Plaintiffs' claims in violation of the Washington State Constitution on April 25, 2023. ECF No. 19 at 5. Additionally, the Complaint seeks declaratory and injunctive relief stemming from "improper detention, arrest, and assault of

Plaintiffs without probable cause." *Id*. at 9, ¶ 9.2.

Defendant Benton County seeks a judgment on the pleadings to be dismissed from this matter because it was not substantively involved in the issues that could give rise to liability. ECF No. 50 at 2. It asserts that the County had a limited presence in the investigation of Plaintiffs on August 5, 2019, and that its only controlling involvement in this matter was issuing the arrest warrant and holding Mosses in jail while awaiting prosecution. *Id*. It alleges that the "Benton County Special Investigations Unit," an entity involved in the investigation and detainments on August 5, is controlled separately from Benton County, and therefore it cannot be held liable for actions undertaken by the "SIU." ECF No. 65 at 3. Further, it alleges that the Complaint's factual allegations are vague and do not sufficiently distinguish between the defendants involved. ECF No. 50 at 2.

## DISCUSSION

As a preliminary matter, Plaintiffs were directed to amend their Complaint *promptly* on October 6, 2023. ECF No. 32. While Plaintiffs have had several intervening instances of contact with the Court (ECF Nos. 36, 44, 49, 54, 55, 56, 58, 62), Plaintiffs nevertheless waited to file an Amended Complaint on March 15, 2024. ECF No. 63. Promptly may be defined as, "in a prompt manner, without delay, very quickly or immediately." *Promptly*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/promptly (last visited April 22,

ORDER GRANTING DEFENDANT BENTON COUNTY'S MOTION FOR JUDGMENT ON THE PLEADINGS ~ 4

2024).  Giving every possible deference to Plaintiffs in this matter, under no construction of "promptly" does the Court accept that a six-month delay falls within the definition.  No additional attempt was made to seek an extension to file an Amended Complaint, and in fact, the Court dismissed John Doe Officers 1–40 for failure to identify and serve all "John Doe Defendants," with no noted response or objection from Plaintiffs.  ECF No. 41.  No explanation for this lengthy delay is offered from Plaintiffs' counsel whatsoever.  As such, the Court bases the factual foundation and summary of claims on the original Complaint, ECF No. 1-1, and disregards Plaintiff's Amended Complain (ECF No. 63). [1]

As was previously discussed, Federal Rule of Civil Procedure 12(c) states "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  In reviewing a Rule 12(c) motion, the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d

---

[1] Plaintiffs provide incomplete citations in their Response to the Motion for Judgment on the Pleadings.  Because the fact section in the Amended Complaint is largely identical to the original Complaint, the Court cannot determine which document Plaintiffs rely on in support.  Regardless, the only operative Complaint is the original (ECF No. 1-1).

ORDER GRANTING DEFENDANT BENTON COUNTY'S MOTION FOR JUDGMENT ON THE PLEADINGS ~ 5

1  922, 925 (9th Cir. 2009). "Analysis under Rule 12(c) is substantially identical to
2  analysis under Rule 12(b)(6) because, under both rules, a court must determine
3  whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a
4  legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)
5  (internal quotation marks and citation omitted). "A judgment on the pleadings is
6  properly granted when, taking all the allegations in the non-moving party's
7  pleadings as true, the moving party is entitled to judgment as a matter of law."
8  *Marshall Naify Revocable Trust v. United States*, 672 F.3d 620, 623 (9th Cir.
9  2012) (quoting *Fajardo v. Cty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)).

10      **I.    Claim for Declaratory and Injunctive Relief**

11      Plaintiffs reference improper detention, arrest, and assault of Plaintiffs
12  without probable cause in their claim for Declaratory Relief and Permanent
13  Injunction, citing a "freedom to be free from the interference with their rights and
14  guaranteed by our State and Federal Constitutions." ECF No. 1-1 at 9–10. Though
15  it does not appear on the face of the Complaint, Plaintiffs insist that the injunctive
16  and declaratory relief claimed is premised upon either Federal Rule of Civil
17  Procedure 57 or the Washington State's Uniform Declaratory Judgment Act, RCW
18  7.24.080.

19      "The limitations upon issuance of a declaratory judgment, expressed as a
20  doctrine of judicial discretion, reflect concerns similar to those underlying the case

and controversy limitation of Article III." *United States v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985). Article III standing requires a plaintiff to demonstrate three elements: (1) plaintiff must have suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) there must be a causal connection between the injury and the challenged conduct that is fairly traceable to the defendant's actions; and (3) it must be "likely" as opposed to "speculative" that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Injunctive relief is premised on a showing of repeated injury or future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). To be entitled to a permanent injunction, a party must show "'(1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction.'" *Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 989 (9th Cir. 2020) (quoting *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013)). Declaratory relief requires evidence that the declaration being sought will remedy the alleged harm. *Mayfield v. United States*, 599 F.3d 964, 971–72 (9th Cir. 2010). And further, declaratory relief is not appropriate when other remedies of law are available.

ORDER GRANTING DEFENDANT BENTON COUNTY'S MOTION FOR JUDGMENT ON THE PLEADINGS ~ 7

*Hawk v. Mayer*, 36 Wash. 2d 858, 865 (1950).  Neither injunctive nor declaratory relief may be premised on past harm.  *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiffs' claims against Benton County fail at every step.  First, Plaintiffs have not shown "a likelihood that of substantial and irreparable harm," will occur imminently.  *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1042 (9th Cir.1999).  The facts of the Complaint as pled indicate that Plaintiffs seek to rectify past alleged harms committed by Benton County, "this claim involves Defendants' improper detention, arrest, and assault of Plaintiffs without probable cause," and thus are not ripe for injunctive or declaratory relief, as the injury has already occurred.  ECF No. 1-1 at 9.  Next, to the extent that Plaintiffs seek declaratory and injunctive relief surrounding medically related issues during various law enforcement interactions, the Court finds that each are either too speculative or not attributable to the actions of Benton County.  The Complaint states that Dion's asthma was "at risk" of being trigger, not that he actually experienced complications from asthma, nor that Benton County specifically was involved in his detainment, as opposed to another responding municipality.  *Id*. at 6, ¶ 6.5.  Dakota, Dion, and Tanya were held in custody by Lewis County, and therefore Benton County is not liable for any treatment resulting from that detainment.  *Id*., ¶ 6.12.  Mosses was held in custody for a year, and during that time, Plaintiffs allege

that his physical and mental health suffered, but provide no additional information as to any specific potential violations committed by Benton County. *Id*. at 8, ¶ 6.20. This is too speculative and does not describe a "concrete and particularized," harm. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Finally, "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *State of Wash*., 759 F.2d at 1357. As evidence by Plaintiffs' attempt to amend their Complaint, other avenues of relief, such as 42 U.S.C. § 1983, are more appropriate claims to plead in this matter.

Though not actually pled in the Complaint, Plaintiff would need to demonstrate that each Defendant caused or personally participated in causing a deprivation of their protected rights. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). However, the Court notes that under Washington State law, 42 U.S.C. § 1983 has a three-year statute of limitation. *See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). A § 1983 action accrues, and the statute of limitations begins to run, when a plaintiff knows or has reason to know of the injury that form the basis of his or her action. *Bagley v. CMC Real Estate Corp*., 925 F.2d 758, 760 (9th Cir. 1991). The bulk of claims stem from the events

of August 5, 2019, meaning the statute of limitations would preclude claims after August 5, 2022.

Nevertheless, to hold a government official liable for violations of a constitutional right, under 42 U.S.C. § 1983, a plaintiff must demonstrate (1) the defendant is a person acting under the color of state law, and (2) the defendant's conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). A municipality cannot be held liable for the constitutional violation of its employees, unless a plaintiff can show that it engages in unconstitutional policies, regulations, or ordinances, promulgated by officials with final policymaking authority. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

Taking all allegations in the Complaint as true, the Court is not able to infer a § 1983 claim against Benton County for violation of any Plaintiffs constitutional rights. And even if a right has been violated, the "policymakers" involved are shielded by immunity. First, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978). And a county, acting in an executive branch function, cannot be made responsible to "take corrective action" against a court, acting in a judicial branch function, as a matter

of the separation of powers. *Foti v. Cnty. of San Mateo*, 90 F. App'x 488, 491 (9th Cir. 2003) ("As the executive branch lacks the authority to order a court to withdraw a duly issued bench warrant, it would be improper for the County to "tak[e] corrective action" against the Superior Court . . . The failure to do so cannot represent an unconstitutional municipal policy or custom."). This is not a case of a misapplied warrant, whereby the effectuating officer arrested the wrong person based on the contents of the warrant. *See Rivera v. County of Los Angeles*, 745 F.3d 384, 390 (9th Cir. 2014). Nor has the Complaint shown that "further investigation" should have been conducted in the face of the emergency, as evidence by the "hours of footage" that Mosses' counsel reviewed in his defense. ECF No. 1-1 at 8, ¶ 6.21; *see Fairley v. Luman*, 281 F.3d 913, 915 (9th Cir.2002) (finding that the officer in charge of booking should have verified that the subject of the warrant was actually apprehended when he knew that the subject had a twin brother). Rather, Plaintiffs argue that the eyewitnesses who provided information at the scene of the shooting were incorrect in their identification of Mosses, but provide no evidence that Benton County was aware that he was not the subject of the warrant. *Gant v. County of Los Angeles*, 772 F.3d 608, 622–23 (9th Cir. 2014); ECF No. 1-1 at 6, ¶ 6.2. Officers reasonably believed that Mosses Colley was the subject of the ongoing investigation, and as such, the warrant issued by a judge in Benton County cannot form the basis for a policy or custom for § 1983 liability.

ORDER GRANTING DEFENDANT BENTON COUNTY'S MOTION FOR JUDGMENT ON THE PLEADINGS ~ 11

*See Baker v. McCollan*, 443 U.S. 137, 145–46 (1979).

Next, the Court agrees with Defendant Benton County's assertion that the contents of the Complaint are vague given the number of county defendants involved. ECF No. 50 at 9. But even assuming the allegations set forth at Tanya Colley's home involved Benton County officers, § 1983 liability is precluded by the statute of limitations. Finally, the treatment that Plaintiffs Dakota, Dion, and Tanya received in the Lewis County jail does not implicate Benton County whatsoever. ECF No. 1-1 at 7, ¶ 6.12. Therefore, Benton County, to the extent its officers were involved at all, cannot be held liable for the detainment aspect of the events on August 5, 2019.

Finally, the Court finds that the claims stemming from the time Mosses was held in the Benton County jail while awaiting trial are time barred. But even if Plaintiffs had a properly pled § 1983 claim, it still fails as a matter of law. First, to the extent that Plaintiffs base their claim on Benton County's failure to investigate or dismiss charges against him, the prosecutors involved in the underlying matter are shielded by immunity in their decision to pursue the charges against Mosses. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir.2012); ECF No. 1-1 at 8, ¶¶ 6.19–6.23. Further, Plaintiffs' claimed deprivation of physical needs while incarcerated is too vague to be the basis for a *Monell,* "policy, practice, or custom" required to hold a municipality liable for a constitutional violation. *See Dougherty*

*v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *see also Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020); *Plumeau v. Sch. Dist. #40*, 130 F.3d 432, 438 (9th Cir. 1997); *Oviatt v. Pearce*, 954 F.2d 1470, 1475 (9th Cir. 1992); ECF No. 1-1 at 8, ¶ 6.20.

## II. State Law Claims

Benton County is also entitled to dismissal of the state law causes of action against it because Plaintiffs' claims fail on the pleadings. As to negligence, Plaintiffs must show "'(1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury.'" *Ehrhart v. King County*, 195 Wash.2d 388, 396 (2020) (quoting *N.L. v. Bethel Sch. Dist.*, 186 Wash.2d 422, 429 (2016). In the context of law enforcement, officers have "a duty to from directly causing harm to another through affirmative acts of misfeasance." *Beltran-Serrano v. City of Tacoma*, 193 Wash.2d 537, 550 (2019). Even if Benton County officers breached this duty while responding to Tanya Colley's home, there is no suggestion they caused any cognizable injury. And while Mosses claims that his physical and mental health suffered while in the custody of Benton County, the Complaint does not describe the deviation in care, nor does it demonstrate that the jail was the cause of the suffering. ECF No. 1-1 at 8, ¶¶ 6.19–6.23. Negligent infliction of emotional distress is similarly based on duty, breach, causation, and damage or injury, and

therefore Plaintiffs' claim against Benton County fails as a matter of law. *Hunsley v. Giard*, 87 Wash.2d 424, 434–36 (1976).

To establish a claim for intentional infliction of emotional distress, a plaintiff must show conduct that is "[s]o outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wash. 2d 52, 59 (1975). Outrage does not extend to mere "insults, indignities, threats, annoyances, petty oppressions, or other trivialities . . . [i]n this area plaintiffs must necessarily be hardened to a certain degree of rough language, unkindness and lack of consideration." *Id*. There is no suggestion that Benton County specifically participated in outrageous conduct. The claim contained within the Complaint is a recital of the elements of the intentional infliction of emotional distress standard, which is strictly prohibited under the well-pleaded complaint rule. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

//

//

//

//

//

ORDER GRANTING DEFENDANT BENTON COUNTY'S MOTION FOR JUDGMENT ON THE PLEADINGS ~ 14

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendant Benton County's Motion for Judgment on the Pleadings (ECF No. 50) is **GRANTED**.  Defendant Benton County is **DISMISSED with prejudice**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED April 22, 2023.



THOMAS O. RICE
United States District Judge